UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| AARON SPEAKS and | § | |
| JOHN STOKER, | § | |
| | § | |
| Plaintiffs, | § | Civil Action No. 1:09-CV-264-SS |
| | § | |
| v. | § | |
| | § | |
| SETON HEALTH CARE d/b/a | § | |
| BRACKENRIDGE HOSPITAL, | § | |
| And SODEXO, INC. | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT SETON'S MOTION FOR SUMMARY JUDGMENT

Defendant Seton Health Care d/b/a University Medical Center at Brackenridge ("Seton") files this motion for summary judgment as to all claims by both Plaintiffs.

Plaintiff John Stoker ("Stoker") makes two claims: (1) race discrimination under Title VII of the Civil Rights Act, Chapter 21 of the TEXAS LABOR CODE, and 42 U.S.C. §1981; and (2) retaliation under those same statutes. (See Plaintiff's Original Petition, Document No. 1). Plaintiff Aaron Speaks ("Speaks") makes claim race discrimination under Title VII of the Civil Rights Act, Chapter 21 of the TEXAS LABOR CODE, and 42 U.S.C. §1981.

Seton moves for summary judgment as to all claims by John Stoker because: (A) Stoker cannot make a prima facie case of race discrimination; and (B) Stoker cannot present any evidence of either race discrimination or retaliation.

To the extent Speaks even makes claims against Seton, Seton also moves for summary judgment as to all claims by Aaron Speaks. Speaks was never an employee of Seton. (Deposition of Aaron Speaks at 282).[1] Speaks worked for Sodexo only. *Id.* Since he began

---

[1] Subsequent cites to the deposition of Aaron Speaks will be cited as (Speaks at [pg. #])."

- 1 -

working for Sodexo in 2005 or 2006, Speaks never applied for a job with Seton. *Id.* at 283. No Seton manager or human resources representative participated in any disciplinary or performance write-ups of Speaks. *Id.* at 305. Seton never took an adverse employment action against Speaks. Speaks admits he has no knowledge of a Seton manager or supervisor taking any action to cause Sodexo to terminate his employment (Speaks at 283) or to negatively affect his ability to get a promotion within Sodexo. (Speaks at 295). Moreover, Speaks did not file a charge of discrimination against Seton within 300 days of his termination by Sodexo. (Declaration of Norma Gonzalez ¶20).

Therefore, it is not clear that Speaks pursues claims against Seton. In the event Speaks makes claims against Seton, Seton asks the Court to grant summary judgment dismissing all such claims. Further, since Sodexo took any relevant adverse employment action against Speaks without Seton's involvement, Seton incorporates by reference and adopts Sodexo's motion for summary judgment as to Speaks' claims.

## I.   Summary Judgment Evidence

### A.   Stoker Background

Stoker was employed as a cook in the Brackenridge Hospital cafeteria from early 2006 until January 28, 2008. (Deposition of John Stoker at pages 37, 38, 186-87).[2] For the first three or four months, Stoker was employed by Defendant Sodexo, which contracts with Seton to manage the Brackenridge cafeteria. *Id.* at 38, 63-64. On March 6, 2006, Stoker became an employee of Seton, still working as a cook in the Brackenridge cafeteria. *Id.* at 186-87.

After Stoker amassed a considerable record of disciplinary and performance problems (*See* Section I.B. below), Seton terminated Stoker's employment on January 28, 2008. *Id.* at 187. Less than two months later, Stoker gained employment in the St. David's North Austin Medical

---

[2] Subsequent cites to the deposition of John Stoker will be cited as (Stoker at [pg. #])."

Center cafeteria making more money and working more hours than he did with Seton. (Stoker at 163-65). Stoker worked for St. David's for approximately a year and a half, was recently fired by St. David's for leaving the work area, and is now claiming discrimination there too. *Id.* at 165-66; 206; 266-67.

**B.     Stoker Disciplinary and Performance Record:**

As described below, Seton terminated Stoker's employment because of his unrelenting pattern of disciplinary and performance problems which culminated in two "last straw" incidents in January 2008. On June 26, 2006, within two months of joining Seton, Stoker was verbally counseled by his manager, Plaintiff Aaron Speaks, about poor customer service and lack of respect for his co-workers. (Declaration of Norma Gonzalez at ¶ 11; Depo. Ex. 19). Speaks, who is African American and a co-plaintiff in this lawsuit, acknowledges that he received a complaint from Stoker's co-worker and counseled Stoker about it (Speaks at 321-22). Stoker does not deny that Speaks counseled him. (Stoker at 207-08).

On July 17, 2006, Stoker was again counseled by his manager, Aaron Speaks. On this occasion, Natasha Franks, a female co-worker, complained that Stoker had touched her hips in an inappropriate way. (Declaration of Norma Gonzalez at ¶ 12; Depo. Ex. 20). Speaks confirms that he counseled Stoker about "his inappropriate behavior" and required Stoker to watch a video about harassment in the workplace. (Speaks at 318-20). Again, Stoker does not deny that Speaks counseled him. (Stoker at 210). Nor does Stoker deny that the female employee made the allegation. *Id.* at 210-11. When asked why Ms. Franks would make up such an allegation, Stoker testified, "At the time, I was dating a lady in the kitchen, and Natasha probably liked me at the time and probably made that up." *Id.* at 211.

On October 11, 2006, Stoker was issued an Employee Coaching/Counseling Report for having three unscheduled absences in a three month period, a violation of Seton's attendance

policy. (Declaration of Norma Gonzalez at ¶ 2; Depo. Ex. 7). Speaks does not remember whether he actually committed the unscheduled absences and does not dispute that they occurred. (Stoker at 68, 217-18). Again, plaintiff Aaron Speaks was Plaintiff Stoker's supervisor who issued the write-up. (Stoker at 67-69; Depo. Ex. 7).

On October 25, 2006, Stoker was issued an Employee Coaching/Counseling Report for speaking rudely to two cafeteria patrons. (Declaration of Norma Gonzalez at ¶ 3; Depo. Ex. 8). Stoker told a patron he was slowing up the line and told a separate female customer who asked for help reading the menu, "You can read." *Id.* Plaintiff Speaks again was the manager who issued the write-up. (Stoker at 219).

On November 8, 2006, Stoker was issued an Employee Coaching/Counseling Report for his fourth unscheduled absence in a three-month period. (Declaration of Norma Gonzalez at ¶ 4; Depo. Ex. 9). Stoker does not recall whether he actually came to work on the days in question and does not claim that the write-up was unfair. (Stoker at 80-82; 225).

On November 30, 2006, Michael Webb, a Sodexo manager, emailed Judi Bork, another Sodexo manager, describing a complaint from a customer. The customer, who was at Brackenridge with her sick child, complained that when she asked John Stoker for a "to go" box, Stoker told her that she should have asked earlier and then refused to give her one. (Declaration of Norma Gonzalez at ¶ 10; Depo. Ex. 16). Stoker does not deny this complaint was made. (Stoker at 215). In fact, Stoker testified that he "probably" made this comment to a customer but only "like in a joking manner. . . but not being rude to any customer." *Id*. at 214. Stoker and Speaks both agree that Michael Webb, the manager who raised the issue, treated them fairly during their employment. (Stoker at 214; Speaks at 298). Speaks, though not remembering the specific details of this incident, acknowledges that he received complaints about Stoker's treatment of customers. (Speaks at 320).

On July 17, 2007, Stoker was issued another Employee Coaching/Counseling Report for three unscheduled absences in a three-month period. (Declaration of Norma Gonzalez at ¶ 5; Depo. Ex. 10).  Stoker was suspended for two days. *Id.*  Stoker does not recall whether he was absent on the days in question, does not remember being suspended, and cannot say whether or not he was treated fairly by receiving the write-up. (Stoker at 82-86; 226).

On August 8, 2007, the Assistant General Manager of the Brackenridge parking service emailed Sodexo's management complaining of Stoker and two other employees improperly parking in designated valet spots. (Declaration of Norma Gonzalez at ¶9; Depo. Ex. 14).  Stoker acknowledges that he parked in the valet spots, admits he was told not to, and does not contend that his being reprimanded was unfair. (Stoker at 101-02)

On September 11, 2007, Sodexo manager Judi Bork counseled Stoker not to bring his own food to work to cook on the grill. (Declaration of Norma Gonzalez at ¶8; Depo. Ex. 13).  Stoker does not remember whether he was counseled about this issue.  (Stoker at 99).

With those incidents in Stoker's immediate past, two events occurred in close sequence in January of 2008 that led to the termination of Stoker's employment.  On Saturday, January 12, 2008, Stoker left Brackenridge during the workday without permission of the supervisor on duty, failed to clock out, and failed to correct his time sheet in the Kronos payroll timekeeping system upon his return. (Declaration of Norma Gonzalez at ¶6; Depo. Ex. 11).   Stoker admits he left the work area for 45 minutes (Stoker at 87) failed to clock out (Stoker at 230), and failed to correct his timecard upon his return (Stoker at 230).   Stoker claims he was sick and throwing up.  Stoker admits that Amanda Ramirez was the "real" supervisor on duty that day (Stoker at 262) but that he did not make any attempt to locate Ms. Ramirez or notify her that he was leaving. (Stoker at 262).

The following Saturday, January 19, 2008, while the January 12, 2008 incident was being investigated, Stoker left the kitchen during the busy evening meal preparation time, went to a part of the hospital where he had no legitimate business, and engaged in an altercation that caused a Seton nurse to file a security report complaining of Stoker's conduct. (Declaration of Norma Gonzalez at ¶6, 7; Depo. Ex. 11, 12). The nurse complained to Seton security that Stoker "became verbally abusive" and said that Stoker said to co-workers that the nurse "should never show her face in the kitchen," and "I better not see her downstairs in the cafeteria." (Declaration of Norma Gonzalez at ¶7; Depo. Ex. 12). Stoker admits he left his area at 4:00 p.m., a time not approved for breaks. (Stoker at 88-89). Stoker denies the nurse's account of his actions but does not deny that the nurse made the accusation or that Seton believed the nurse's account of the event. (Stoker at 95-96; 237). When asked, Stoker could not think of any reason the nurse would make up her complaint and go out of her way to report it to security. *Id*. at 95.

Because of the January 12 and January 19 incidents, and in light of his long and consistent disciplinary and poor performance record, Stoker's employment was terminated on January 28, 2009. (Declaration of Norma Gonzalez at ¶7, 16; Depo. Ex. 12). Stoker's position was filled by Debra Drewry, who is African American. (Declaration of Norma Gonzalez at ¶16).

### C.    Stoker's Eleventh Hour Complaint of Discrimination:

Between the January 12 and January 19 incidents, Stoker made what appears to be an effort to save his job. On Tuesday, January 15, 2009, as Seton and Sodexo were investigating the events of the previous Saturday, January 12, Stoker sent an email to a high ranking Seton manager, Bruce Broslet, making a vague and general claim of discrimination. (Stoker at 144). His email to Broslet stated in part that he was being written up for "a lot of things like coming to work late, accusing me of touching female employees, and a lot of other nonsense." (Stoker at 144; Declaration of Norma Gonzalez at ¶13; Depo. Ex. 23).

Norma Gonzalez met with Stoker to investigate his claims. (Stoker at 149). Stoker does not recall identifying any specific acts of discrimination. (Stoker at 242-43). Ms. Gonzalez recalls an absence of specific claims. (Declaration of Norma Gonzalez at ¶17). For example, Stoker perceived that African American employees "got written up quicker" than non-African American employees. *Id.* However, he could not provide specific examples. *Id.* Also by way of example, Stoker alleged that two Hispanic employees, Juan and Irma, did not get counseled for attendance. However, he provided no specifics as to when and for what they should have been counseled. *Id.* Stoker complained that Seton supervisor Amanda Ramirez did not say anything about an employee named Debbie talking on the cell phone. *Id.* However, Stoker was not written up for talking on a cell phone and could not identify any similarly situated African American employee who was. *Id.* Mr. Stoker made no complaint of racially charged words or actions. *Id.*

This complaint played no role in Stoker's discharge. (Declaration of Norma Gonzalez at ¶18). At the time he sent the January 15 email, the January 12 incident was being investigated, and the January 19 incident involving the nurse's report to security happened only four days later. (Declaration of Norma Gonzalez at ¶14).

      **D.**      **Absence of Evidence of Race Discrimination or Retaliation**

When asked to identify the facts that suggest his termination was motivated either by his race or by the fact that he complained of discrimination, Stoker cited only that he feels Norma Gonzalez did not take his complaint of discrimination seriously. (Stoker at 196-97).

Stoker admits he was never called any racial names while he worked at Seton or Sodexo. (Stoker at 137). Stoker claims to have overheard some Spanish-speaking employees in the kitchen referring to him behind has back by a Spanish language racial slur, but Stoker admits he never reported this to Seton and that the employees were non-supervisory employees. *Id.* at 193-

94. Notably, Stoker accuses only Judi Bork, a Sodexo employee of discriminating against him because of race. (Stoker at 157-58).

Plaintiff Speaks – who was Stoker's manager and is an African-American co-plaintiff in this lawsuit -- acknowledged that he never made any report to any manager or human resources representative that Stoker was being discriminated against or being treated unfairly. (Speaks at 288; 298). Speaks admits that there was never a circumstance in which a Seton supervisor or human resources representative instructed him to write up Stoker for something that Speaks thought was unfair. (Speaks at 288).

Stoker suggested in his deposition that his co-plaintiff Aaron Speaks was instructed by others to write up Stoker for events that did not occur. However, neither Stoker's own testimony, Speaks' testimony, nor any actual evidence supports Stoker's general assertion. Speaks testified that he never wrote Stoker up for something that he knew Stoker did not do. (Speaks at 294).

Speaks acknowledges that it is not uncommon for a manager like himself to write up an employee for an incident that he did not personally observe but that was reported to him by someone else. (Speaks at 289). Speaks testified that there was only one instance in which he believes Stoker was written-up for something that did not happen – but that situation involved Stoker claiming that a misunderstanding had occurred. (Speaks at 290-91). Speaks wrote up Stoker for an instance of discourtesy to a guest. *Id.* at 291-92. Later, Stoker told Speaks that the guest's husband returned to the cafeteria and apologized to Stoker saying, "Hey man. . . it wasn't your fault. My wife was just very, very upset and things of that nature." *Id.* at 293. Based on what Stoker told him about the apology, Speaks believes that was the only incident in which Speaks may have written Stoker up for something that he did not do wrong. *Id.* at 290. Of

course, neither this incident nor any other incident suggests that anyone at Sodexo or Seton instructed Speaks to write Stoker up for an incident that did not occur.

## II.  Summary Judgment Standard

To prevail on its motion for summary judgment, Seton must show from the evidence of record that there is no "genuine issue as to any material fact" as to the claims at issue in the motion.  FED. R. CIV. P. 56(c).  An alleged factual dispute will not defeat the motion unless it is genuine and material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When a properly supported motion for summary judgment is before the Court, it cannot be defeated by mere allegations or denials within the pleadings.  *Id.* at 248.  Where a party, like Speaks and Stoker here, bears the burden of proof at trial, he must, after an adequate opportunity for discovery and upon motion, make a showing sufficient to establish the existence of an element essential to his case.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  Failure of the non-moving party to establish such an essential element mandates that the Motion for Summary Judgment be granted because no genuine issue for trial can exist.  *Id.*

## III.  Argument and Authorities

### A.     Termination of Employment:  No Prima Facie Case of Race Discrimination

Neither Stoker nor Speaks can even make a prima facie case of race discrimination with respect to the termination of their employment because both men were replaced by African-American employees.

Under the *McDonnel Douglass* burden shifting analysis, which is applicable to Title VII, section 1981, and Chapter 21 claims, a plaintiff can prove a claim of intentional discrimination by first establishing a prima facie case.  *Johnson v. Spohn*, 2009 U.S. App. LEXIS 13604, 32 (5th Cir. June 23, 2009); *Stewart v. City of Bryan Pub. Works*, 2005 U.S. App. LEXIS 1060, **5-6 (5th Cir. 2005).  In the case of a termination, the plaintiff must show that (1) he belongs to a

protected group; (2) was qualified for his position; (3) was dismissed or suffered an adverse employment action and (4) was replaced with a similarly qualified person who was not a member of his protected group. *Id.*

Stoker's position was filled by Debra Drewry, who is African American. (Declaration of Norma Gonzalez at ¶16). Thus, Stoker cannot establish prong (4) of his prima facie case of race discrimination.

Seton did not terminate or replace Speaks. For this reason alone, Speaks cannot make a prima facie case under prong (3). Additionally, Seton understands that Sodexo hired an African American to replace Speaks. Seton refers to and incorporates Sodexo's motion and evidence on this point. If so, Speaks cannot establish prong (4) of his prima facie case of race discrimination.

### B. Seton's Legitimate Non-Discriminatory Reason for Terminating Stoker

If Stoker or Speaks makes a prima facie case, the burden then shifts to Seton to articulate one or more legitimate, nondiscriminatory reasons for the decision. This burden is "one of production not persuasion." *Bright v. G B Bioscience, Inc.*, 2008 U.S. App. LEXIS 25304, **14 (5th Cir. December 15, 2008). If the employer articulates a legitimate, non-discriminatory reason, any presumption of discrimination drops from the case. *Septimus v. University of Houston*, 399 F.3d 601, 610-11 (5th Cir. 2005); *Maclas v. Certoff,* 2008 U.S. Dist. LEXIS 27243,*15 (W.D. Tex. 2008).

Stoker's employment was terminated because of the January 12 and January 19 incidents, and in light of Stoker's long and consistent disciplinary and poor performance record. (Declaration of Norma Gonzalez at ¶7, 16; Depo. Ex. 12). Seton refers the Court to Section I.B. above for the specific facts and citation to the summary judgment evidence.

### C.     There is No Evidence of Pretext for Discrimination or Retaliation

Once the employer presents evidence of a legitimate non-discriminatory reason for discharge, the burden shifts back to the plaintiff to demonstrate that the articulated reason was merely a pretext for unlawful discrimination or retaliation. *Prejean v. Radiology Assocs. Of Southwest La, Inc.* 2009 U.S. App. LEXIS 19363, *8 (5th Cir. Aug. 27, 2009); *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 881 (5th Cir. 2003).

Unsubstantiated assertions and unsupported speculation are not sufficient to defeat a motion for summary judgment. *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003).  In employment discrimination cases, it is imperative that the non-movant plaintiff "present evidence – not just conjecture and speculation" that discrimination occurred. *Amie v. El Paso Independent School Dist.*, 2007 U.S. Dist. LEXIS 39749, *9 (W.D.Tex. 2007) (quoting *Grimes v. Tex. Dep't. of Mental Health,* 102 F.3d 137, 140 (5th Cir. 1996).

Merely disputing Seton's assessment of his work performance will not necessarily support an inference of pretext. *Shackelford v. Deloitte & Touche, L.L.P.*, 190 F.3d 398, 408-09 (5th Cir. 1999); *see also Smith v. St. Regis Corp.*, 850 F. Supp. 1296, 1318 (S.D. Miss. 1994), aff'd, 48 F.3d 531 (5th Cir. 1995) (noting that an honest belief in a non-discriminatory reason for discharge, even if incorrect, is not discrimination) (citing *Wright v. Western Elec. Co., Inc*, (664 F.2d 959, 964).  The issue is whether Seton's perception of Stoker's performance and disciplinary issues, accurate or not, was actually a reason for his termination. *Shackelford* at 408-09.

Stoker can present no evidence that his discharge was motivated by his race or his having made a complaint of discrimination.  When asked in his deposition what facts he points to that suggest his termination was motivated either by his race or by the fact that he complained of

discrimination, Stoker cites only the fact that he feels Norma Gonzalez did not take his complaint of discrimination seriously.  (Stoker at 197).

Stoker admits he was never called any racial names while he worked at Seton or Sodexo.  (Stoker at 137).   Stoker claims some Spanish-speaking employees in the kitchen referred to him by a Spanish slur, but Stoker admits he never reported this to Seton and that the employees were non-supervisory employees. *Id.* at 193-94.

Plaintiff Speaks -- who was Stoker's manager, is African-American, and is a co-Plaintiff in this lawsuit -- issued many of the disciplinary and performance warnings to Stoker.  (*See* Section I.B. above).  Speaks acknowledges that he never made any report to any manager or human resources representative that Stoker was being discriminated against or being treated unfairly.  (Speaks at 288; 298).  Speaks admits that there was never a circumstance in which a Seton supervisor or human resources representative instructed him to write up Stoker for something that Speaks thought was unfair.  (Speaks at 288).

In sum, there is simply no evidence that race or protected activity played any role in the decision to terminate Stoker's employment.

### D.     Claim for Denied Promotion

Stoker's claim regarding an alleged promotion with Seton is unclear at best.  Stoker claims to have applied with Sodexo for several positions.  Seton played no role in any of these application processes.  (Declaration of Norma Gonzalez ¶19).

Stoker has no memory of what job he applied for through Seton. (Stoker at 247-48).  When asked about the one job Seton has a record of his applying for, Stoker claimed the decision must have been discriminatory even though he did not know who Seton hired for the job. (Stoker at 248-49).

When asked in his deposition to compare his credentials to those of the successful applicant, Stoker testified, "On paper it might look like he's got the experience, but you put me and him in the kitchen, he won't stand a chance. (Stoker at 251).   To be probative of intentional discrimination, disparities in qualifications must be "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Deines v. Texas Dep't of Protective & Regulator Servs.,* 164 F.3d 277, 280-81 (5th Cir. 1999); *Bright v. G B Bioscience, Inc.*, 2008 U.S. App. LEXIS 25304, \*\*14 (5th Cir. December 15, 2008).

Seton asks the Court to grant summary judgment on Stoker's promotion-related claims because he has not identified any promotion he claims Seton denied him much less any evidence that the denial was discriminatory or retaliatory.

## IV.     Conclusion

Speaks never worked for or was subjected to an adverse employment action by Seton. Neither Stoker nor Speaks can establish a prima facie case of race discrimination with respect to their termination.  And neither Stoker nor Speaks can produce any evidence that their race or (in Stoker's case) protected activity motivated their discharge or Stoker's failure to obtain a promotion.  Therefore, Seton prays that the Court dismiss all claims of Stoker and Speaks against Seton with prejudice and award Seton its costs and any other relief to which it is entitled.

Respectfully submitted,

/s/ Thomas A. Nesbitt
  State Bar No.  24007738
tnesbitt@deshazonesbitt.com
Scott F. DeShazo
  State Bar No. 24011414
sdeshazo@deshazonesbitt.com
DeShazo & Nesbitt L.L.P.
100 Congress Ave., Suite 800
Austin, Texas  78701
512/617-5560
512/617-5563 (Fax)
**ATTORNEYS FOR SETON HEALTH CARE**

### CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of December, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send the notification of such filing to the following:

Kell A. Simon
Ross Law Group
1104 San Antonio Street
Austin, Texas 78701
FAX:  512-474-5306
**Attorney for Plaintiffs**

Linda C. Schoonmaker
Seyfarth Shaw, L.L.P.
700 Louisiana St., Ste 3700
Houston, Texas 77002
FAX:  713- 225-2340
**Attorney for Sodexo, Inc.**

/s/ Thomas A. Nesbitt

- 14 -

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| AARON SPEAKS and<br>JOHN STOKER,<br><br>           Plaintiffs,<br><br>v.<br><br>SETON HEALTH CARE d/b/a<br>BRACKENRIDGE HOSPITAL,<br>And SODEXO, INC.<br><br>           Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 1:09-CV-264-SS |

## ORDER GRANTING FINAL SUMMARY JUDGMENT

The Court, having Considered Defendant Seton's Motion for Summary Judgment, is of the opinion that such Motion should be granted.  It is therefore ORDERED that Defendant Seton's Motion for Summary Judgment is GRANTED, and that all claims and causes of action against Defendant Seton are DISMISSED WITH PREJUDICE.

Defendant Seton shall have and recover its costs of court.  This case is ordered CLOSED.

SIGNED AND ENTERED this _____ day of _____, 2009.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE